UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NAJEE RICHARD,

        Plaintiff,

       v.                                      Case No. 24-cv-0873

TAMI SCHULT, et al.,

        Defendants.

## DECISION AND ORDER

      Plaintiff Najee Richard, who is incarcerated at Dodge Correctional Institution, is representing himself in this 42 U.S.C. §1983 case. He is proceeding on a conditions-of-confinement claim and a retaliation claim. Dkt. Nos. 11, 13. Richard brought this case in the Western District of Wisconsin. On July 12, 2024, the case was transferred to the Eastern District and assigned to Chief Judge Pamela Pepper. A little more than a month later, the case was reassigned to me after the parties consented to magistrate judge jurisdiction. On September 23, 2024, Richard filed a motion regarding deductions from his prison trust account and a motion to revoke his consent to magistrate jurisdiction. He then filed two motions to appoint counsel. The Court will address each motion in turn.

**1. The Court will grant Richard's motion to review deductions from his prison trust account.**

      Per 28 U.S.C. §1915(b)(2), after a prisoner pays an initial partial filing fee, he must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." On November 8, 2023, Richard paid a $32.22 initial partial filing fee. Following this payment, deductions were regularly made from Richard's account based on the preceding month's

income. Richard's prison sentence expired on July 29, 2024, at which time his prison trust account was closed. Dodge Correctional Institution cut a check in the amount of $296.15, and mailed it to the Kenosha County Jail, where Richard was transferred. The check was deposited into Richard's jail account. About two weeks later, Richard was transferred back to Dodge. The jail cut a check in the amount of $296.15 (the same amount it had received from Dodge) and mailed it to Dodge. Dodge treated the transfer of funds as "income" and, per §1915(b)(2), deducted 20% ($59.23) and sent it to the Court as payment toward the balance of the filing fee that Richard owes in this case.

Richard asserts that the $59.23 deduction was erroneous because the $296.15 deposit was not "income" but was merely the movement of funds from one institution to another. Richard asserts that considering this deposit as income is "double dipping" because the $296.15 balance is the amount that was left after the 20% monthly deductions that Dodge had been making since he paid the initial partial filing fee. Richard clarifies that he had no "income" during the two weeks he was at the jail, so no deduction was required under the statute when he arrived at Dodge. The Court agrees that Dodge should not have considered the transfer of funds from the jail to Dodge as "income," so a deduction pursuant to §1915(b)(2) was not appropriate. The Court will therefore grant Richard's motion and will direct that the $59.23 payment sent to the Court by Dodge be refunded.

**2. The Court will deny Richard's motion to revoke his consent to magistrate jurisdiction.**

When Richard's case was transferred from the Western District, the clerk's office sent him a letter explaining that his case had been assigned to Judge Pepper and requested that he complete a form regarding magistrate judge jurisdiction. Dkt. Nos. 26, 28. Richard returned the form on August 28, 2024, consenting to the magistrate judge named on the form conducting all proceedings in this case. Dkt. No. 29. About a month later, on September 23, 2024, Richard filed a motion to

2

Case 2:24-cv-00873-SCD    Filed 10/17/24    Page 2 of 5    Document 36

revoke his consent. He states that, after much thought, he has decided that he would prefer a district judge to preside over his case. He explains that he initially consented because he thought it might "upset the judge" if he refused. Absent extraordinary circumstances, a party cannot revoke his consent to proceed before a magistrate judge once he gives it. 28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b); *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513, 516 (7th Cir. 2003). A change or heart does not constitute extraordinary circumstances, so the Court will deny Richard's motion.

**3. The Court will deny Richard's motions to appoint counsel.**

On September 30, 2024, Richard filed a motion to appoint counsel; he filed a second motion to appoint counsel a little more than a week later. He states that he wrote letters to three lawyers in an effort to locate counsel without the Court's help. He also explains that he has difficulty understanding what he reads. He notes that he reads at a 0.7 level, but he does not explain what that means. *See* Dkt. No. 35-1. Richard received a high school equivalency diploma on June 3, 2024.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

It appears that Richard has satisfied the first prong of the standard. Nevertheless, the Court will deny his motion because he appears capable of representing himself through the briefing of

summary judgment.  When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).  Richard is proceeding on claims based on allegations that prison staff forced him to use rotting potatoes from the garbage to prepare food and that he received a conduct report for complaining about the contaminated food.  Richard's claim is straightforward and will largely turn on his recollection of what happened, whom he interacted with, and what responses he received.  His filings, including his complaint, have been organized and easy to understand, giving the Court confidence that he understands his claim and what information and documents he needs to support his version of what happened.  Further, nothing suggests that Richard lacks the capacity to participate in discovery.  The Court acknowledges that litigation may be overwhelming for non-lawyers, especially those with limited education, but this is a challenge all prisoner plaintiffs face.  Richard is encouraged to review the enclosed guide, which includes helpful information about how the case will proceed.  Richard may also take advantage of resources available at his institution's law library.

Now that discovery is open, Richard may ask Defendants to provide him with information that he believes he needs to prove his claims.  He may ask Defendants up to twenty-five written questions (called interrogatories in the Federal Rules), and he may ask for documents that Defendants have in their possession.  *See* Fed. R. Civ. P. 33 and 34; Civil L. R. 33.  Richard is advised that Defendants may object to a request to the extent they believe the request is improper.  If Richard does not agree with an objection, he should try to informally resolve the dispute with Defendants' lawyer.  *See* Civil L. R. 37.  Most parties are able to resolve discovery disputes without

4

the Court's involvement. If he and Defendants' lawyer are unable to resolve the dispute on their own, he may file a motion asking the Court to get involved. If Richard asks the Court to get involved, he must describe the discovery dispute in detail and explain what efforts the parties made to resolve the dispute before involving the Court. As a reminder, although Richard should direct his discovery requests to the Defendants, he must *mail* his discovery requests to their lawyer. Richard should not file his discovery requests with the Court; Defendants are not obligated to respond to requests that are not properly served.

The Court will therefore deny Richard's motions to appoint counsel because he appears competent to represent himself through the briefing of summary judgment. If new challenges arise that Richard does not believe he can overcome on his own, he may renew his motion. If he does so, he should be specific about the challenges he faces and the efforts he has made to overcome them.

**IT IS THEREFORE ORDERED** that Richard's motion to reevaluate deductions from his prison trust account (Dkt. No. 32) is **GRANTED**. The clerk's office is directed to facilitate the refund to Richard of the $59.23 payment sent by Dodge Correctional Institution.

**IT IS FURTHER ORDERED** that Richard's motion revoke consent (Dkt. No. 33) is **DENIED** and his motions to appoint counsel (Dkt. Nos. 34, 35) are **DENIED without prejudice**. The clerk's office is directed to include a copy of the guide "Answers to Pro Se Litigants' Common Questions" along with this decision.

Dated at Milwaukee, Wisconsin on October 17, 2024.

STEPHEN C. DRIES
United States Magistrate Judge